## 49570. COMTROL, INC. v. H-K CORPORATION.

STOLZ, Judge.

Plaintiff Comtrol, Inc. is a company which specializes in the use of telephonic equipment. Defendant H-K Corporation, whose telephone bills at the location in question ran to about $60,000 per year, employed it to review the telephonic communications system provided

by Southern Bell Telephone and Telegraph Company with a view to achieving lower costs and better service. The parties entered into a written agreement by which Comtrol agreed to survey the telephone communications system, review past billings in a search for refunds, and resurvey the service for billing accuracy every 12 months. H-K agreed to pay one half of any refunds upon receipt thereof and to pay "50% of the monthly savings achieved during 60 months of service as a result of accepted recommendations or corrected overbilling," on a monthly instalment basis. The agreement "does not obligate client to accept and/or order the recommended changes, however, if the changes recommended by Comtrol, Inc. are made following such recommendation or recommendations, then and in that event client shall pay to Comtrol, Inc. all sums due as herein set forth."

Comtrol, Inc. conducted the survey, using certain Tel-Tron equipment, and discovered overbilling in the amount of $306.05 per month. Southern Bell refunded this amount over the seven-month period of its occurrence, and H-K remitted one half the amount to Comtrol, along with four months rental on the equipment. The budget director also terminated permission to conduct examination of the files. Comtrol replied, acknowledging the check, billing for an equipment installation fee of $112, demanding a monthly instalment fee of one half the overcharge savings for the balance of the five-year contract, and further stating: "Annual savings exceeding $16,000 are ready for presentation. We obviously will not present them if you have no further interest in reducing your telephone costs. I should point out, however, that we have incurred a great deal of expense in conducting your survey and fail to understand your loss of interest at this time."

Subsequently, Comtrol, Inc. filed suit seeking to recover the $112 installation fee, half the monthly savings resulting from overcharges for 53 months ($8,586) and one half of $16,000 per year for five years ($40,000). At the conclusion of the plaintiff's evidence before the judge sitting without a jury the defendant moved for and was granted a motion to dismiss the complaint under Code Ann. § 81A-141 (b) from which

plaintiff appeals.

1. Changes recommended by the plaintiff in the prepared report were never submitted to the defendant. It matters not which party first breached the contract; under the agreement as written Comtrol, Inc. did not obligate itself to submit recommended changes, and did not obligate the client to accept or order them when and if submitted. That part of the action seeking a recovery on a proposed $16,000 per year fails to state a claim.

2. As previously noted, this case was tried before the judge without a jury. At the conclusion of the plaintiff's evidence, the defendant moved for and was granted a motion to dismiss under Code Ann. § 81A-141 (b), which provides in part, "After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this section, other than a dismissal for lack of jurisdiction or for improper venue or for lack of an indispensable party, operates as an adjudication upon the merits." "Under Sec. 41 (b), a trial judge in a non-jury case expressly has the power to adjudicate the case on the merits at the conclusion of plaintiff's case. If the trial judge has the power of adjudication of the facts upon motion for involuntary dismissal in a non-jury case, he must weigh the evidence. There is no obligation in the statute that the judge in determining the facts must consider plaintiff's evidence in a light most favorable to the plaintiff. Since the court determines the facts as well as the law, it necessarily follows that the motion may be sustained even though plaintiff may have established a prima facie case. This construction has also been placed on Rule 41 (b) of the Federal Rules of Civil Procedure. See 5 Moore's Federal Practice 1155, § 41.13[4]." *Pichulik v. Air Conditioning*

*&c. Co.,* 123 Ga. App. 195, 197 (180 SE2d 286).

Thus, in cases of this nature, the trial judge sits as trier of fact, and his findings are analogous to the verdict of a jury and should not be disturbed if there is any evidence to support them. *Givens v. Gray,* 126 Ga. App. 309, 310 (190 SE2d 607) and cits. The credibility of the witnesses is likewise for his determination. *Givens v. Gray,* supra, and cits. "The trial judge had the privilege of accepting as true that evidence which most commended itself to his approval." *First Nat. Bank of Atlanta v. Langford,* 126 Ga. App. 325, 327 (190 SE2d 803) and cit. It logically follows that the trial judge, in such cases, can determine when essential facts have not been proved. While the theory expressed in *Phinizy v. Bush,* 135 Ga. 678 (7) (70 SE 243), cited in the dissent, is sound, it does not relieve the plaintiff from the absolute necessity of proving his damages. "Remote or consequential damages are not allowed whenever they cannot be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." Code § 20-1406. "A party who has been injured by a breach of contract can recover profits that would have resulted from performance, when their amount and the fact that they have been prevented by the breach of the defendant can be proved with reasonable certainty." *Carter v. Greenville Service Co.,* 111 Ga. App. 651, 652 (1) (143 SE2d 1) and cits.

In the case before us, the plaintiff failed to prove all of its expenses. For example, there was evidence that if the contract had remained of force, the plaintiff would have conducted monthly reviews to determine the amount actually saved by the defendant. Yet, there was no evidence as to the plaintiff's expense in conducting these monthly audits. While there was evidence that the plaintiff's contentions as to the defendant's savings were based on a one-month survey made by the plaintiff, its president testified that "the report was based on a study of the particular month. What the effect of today's rates per day is, I don't say." There was no evidence that the month referred to in the report was representative, but

uncontroverted evidence that "the savings . . . measured by the study month . . . have changed from time to time" and that the change might be dramatic. Further, the evidence showed that billing errors are sometimes discovered by the telephone company in the course of ordinary equipment changes. The trial judge concluded that there was insufficient proof that the overbilling discovered by the plaintiff would have continued unabated for five years.

In effect, the trial judge ruled that the plaintiff had failed to carry its burden of proof. His findings amount to a jury verdict under the authorities previously cited. The record amply supports the judgment below. This court cannot substitute its judgment, as trier of fact, for that made in the Civil Court of Fulton County.

*Judgment affirmed. Bell, C. J., Pannell, P. J., Quillian, Clark, Webb and Marshall, JJ., concur. Deen, P. J., dissents. Evans, J., concurs specially in the dissent.*

ARGUED SEPTEMBER 5, 1974 — DECIDED MARCH 5, 1975 — REHEARING DENIED MARCH 21, 1975 —

*Carter, Ansley, Smith & McLendon, James B. Gurley,* for appellant.

*Kilpatrick, Cody, Rogers, McClatchey & Regenstein, A. Stephen Clay,* for appellee.

DEEN, Presiding Judge, dissenting.

I agree with the majority opinion that the findings of the trial judge amount to a jury verdict, and that the trial judge in effect ruled that the plaintiff had failed to carry its burden of proof. (The language of the order is: "The plaintiff has not proved his damages as required by Section 20-1406.") I also agree that this is true of the installation fee and the savings contended for, *if* H-K Corp. had adopted Comtrol's recommendations, which, however it did not and was not legally bound to do.

What remains is not a question of fact but one of law. It is undisputed that Comtrol discovered overbilling in the sum of $306.05 per month, reported it, and the telephone company acknowledged and repaid the money

to the consumer, and the consumer paid half the sum received to the plaintiff. This amounted to half the overbilling for a seven-month period, and the question is the proper construction of a contract provision, on the happening of such an event, that H-K agreed to pay one-half of any refunds upon receipt thereof *and also* "50% of the monthly savings achieved during 60 months of service as a result of . . . corrected overbilling."

The question is simple. Does the client H-K owe *only* one-half the amount refunded by the telephone company or does it owe 50% of the savings resulting from corrected overbilling *for 60 months?* The monthly amount of overbilling has already been established; there is no need, as the majority opinion insists, to "conduct monthly reviews to determine the amount actually saved." That amount was ascertained when the overbilling was discovered and corrected. As to the idea that at some future time the telephone company might have discovered and corrected the overcharge on its own, such an eventuality is certainly possible. But it has nothing to do with the defendant's promise that, if Comtrol *did* discover and have any overbilling *in fact* corrected (as this was) then the client would pay "50% of the monthly savings achieved. . . as a result of. . . corrected overbilling." The monthly savings are determined by the amount of overcharge, and when that overcharge was discovered *and corrected* the defendant under its agreement was liable to the plaintiff for an amount equal to half such sum over a period of 60 months. This is not a question of fact but a question of law as to the construction of the contract provision insofar as it relates to *corrected overbilling* only. When the defendant signed the contract it was doubtless well aware that corrected overbilling, if it had not been discovered by the plaintiff, might some time or other be discovered by somebody else — perhaps the defendant, perhaps the user, perhaps simply by accident. The point is that the defendant agreed that *if* the plaintiff discovered it, and *if* it resulted in a monthly savings by reason of being corrected by the telephone company, *in that event* the defendant would pay half of such monthly corrected overcharge to the plaintiff for a period of 60 months. This it has failed to do. "It is not necessarily true

that where one person contracts with another for the performance of services, his liability does not become fixed until after such services are performed. This is a matter which may be governed entirely by contract." *Phinizy v. Bush,* 135 Ga. 678, 679 (70 SE 243). There was no burden on the plaintiff, after proving discovery of overcharge by it and correction by the telephone company, to take on the impossible task of proving that nobody else might have turned up the same error at some undisclosed future time.

I am authorized to state that Judge Evans concurs in this dissent.

EVANS, Judge, dissenting.

I fully concur in the dissent as written by Judge Deen. However, because the majority opinion relies upon *Pichulik v. Air Conditioning &c. Co.,* 123 Ga. App. 195, 197 (180 SE2d 286), I feel that one thing should be pointed out respecting that decision. This case is not authority for the proposition that a judge, sitting without a jury, in considering a motion to dismiss, may use a different rule than when the case is being tried before a jury. It is the law of this state that whenever a motion, the effect of which is to dispose of the case without submitting it to the jury for a decision on its merits, is under consideration, *the evidence must be construed and weighed most strongly in favor of the party opposing the motion.* See *Whitaker v. Paden,* 78 Ga. App. 145 (1) (50 SE2d 774); *Curry v. Roberson,* 87 Ga. App. 785, 786 (75 SE2d 282).

The law of Georgia does not allow a judge, sitting without a jury, to use a different formula in deciding whether he will dismiss a case. It is true that there is a statement in the *Pichulik* case, supra, which says that the judge, sitting without a jury, was not required to consider the evidence in a light most favorable towards the plaintiff. But that statement is obiter, and runs counter to the entire scheme of law of this state on the subject.